The CROWN ENTERPRISES,
INC., Appellant,

v.

The STATE BOARD OF EQUALIZATION et al., Appellees.

Supreme Court of Tennessee.

Nov. 15, 1976.

James W. Bradford, Jr., Edwin O. Norris, Hunter, Smith, Davis, Norris, Treadway & Hadden, Kingsport, for appellant.

R. A. Ashley, Jr., Atty. Gen., Everett H. Falk, Deputy Atty. Gen., Nashville, for appellees.

COOPER, Chief Justice.

## OPINION

In this action Crown Enterprises, Inc., challenges the classification of real property as "public utility property" for ad valorem tax assessment purposes.

The action originated as a petition for certiorari from the State Board of Equalization. Appellant contended that the taxing authority usurped the jurisdiction of the Tennessee Public Service Commission by classifying and assessing the taxpayer's property according to the use made of the property by the lessees, that the property should have been classed as "industrial and commercial property," and that the procedure followed by the Board in considering the appeal of the property classification violated due process. On considering the issues in the light of the record filed with the court by the State Board of Equalization and the evidence submitted in the chancery court, the chancellor concluded the Board had not acted illegally or in excess of its jurisdiction in classifying appellant's property for tax purposes and dismissed the petition for certiorari. Crown Enterprises, Inc., appealed, taking issue with the chancellor's holding on each of the issues raised in the petition for certiorari.

Appellant is a Tennessee corporation engaged in the business of acquiring, leasing, renting, and owning real property. In the prosecution of its business, it has leased real property to regulated public utilities in several of the larger cities of Tennessee. One such lease involves 6.3 acres of land located at 1500 Second Avenue, South, Nashville, Tennessee. The property is leased to the Mason and Dixon Lines, Inc., for use in the conduct of its business as a regulated public utility. Mason Dixon operates a truck terminal and repair shop on the property.

In 1973, the Assessor of Property for Metropolitan Nashville and Davidson County classified the property as public utility property and assessed the property to appellant at fifty-five per cent of its fair market value. Appellant perfected an appeal to the State Board of Equalization, challenging the classification of the property. The appeal was heard by a "hearing examiner" for the State Board, with the result that the "hearing examiner" orally

informed appellant the property would be classified as commercial and industrial property, which carries a lower assessment than public utility property.

On reviewing the report of the "hearing examiner," the Executive Secretary of the State Board of Equalization notified appellant that he disagreed with the conclusion of the "hearing examiner," and issued a "Corrected Official Certificate" classifying the property as public utility property.

Appellant took issue with the action of the Executive Secretary and was granted a hearing before the State Board of Equalization. The State Board classified the property as "public utility property," subject to being assessed at fifty-five per cent of its fair market value.

Article II, Section 28 of the Tennessee Constitution, as amended in 1973, requires classification of property for ad valorem tax purposes, and prescribes four subclassifications: (1) public utility property, (2) industrial and commercial property, (3) residential property, and (4) farm property. In establishing the classifications and subclassifications, Article II, Section 28 specifically provides that the Legislature shall direct the manner in which the value and definition of the property in each class or subclass are to be ascertained.

The Legislature has enacted a comprehensive Property Assessment and Classification Act, now codified in Title 67, Tennessee Code Annotated, and has provided in Section 67–611 that:

> "For the purpose of taxation all real property except vacant or unused property or property held for use, shall be classified *according to use,* and assessed as hereinafter provided . . . " (Emphasis supplied.)

Appellant insists that the phrase "according to use" requires property to be assessed to the owner in accordance with the use the owner makes of the property. On the other hand, appellee insists it is the actual use to which the property is put that determines its classification. This court considered similar contentions with respect to personal property—specifically, railroad cars de-

signed to transport meats and other products requiring special equipment and which were leased to private businesses—and held that it was the use to which the property was being put, not ownership of the property, that determined property classification.

> "The Tennessee statutes do not attempt to assess or tax property according to ownership, but according to use." *Gen. Am. Transp. Corp. v. Tenn. Bd. of Equal.,* Tenn., 536 S.W.2d 212 (1976).

If it were otherwise, and the classification depended upon ownership of the property, a public utility could defeat the constitutionally prescribed classification of property merely by leasing property needed to operate the public utility from a non-public utility owner of property.

■ Public utility property is defined in T.C.A. 67–601(7)

> " . . . to include all property of every kind, whether owned or leased, and used, or held for use, directly or indirectly in the operation of a public utility, which shall include but not necessarily be limited to the following business entities, whether corporate or otherwise: . . . (11) motor bus and/or truck companies holding a Certificate of Convenience and Necessity or contract haulers permit from the Tennessee public service commission or the interstate commerce commission and domiciled in this state and/or owning or leasing real or personal property located in this state; . . . . "

By its terms, the public utility property definition includes all property, whether owned or leased, and used or held for use directly or indirectly in the operation of a public utility. The 6.3 acre tract of land owned by appellant was in fact put to use as a truck terminal and repair facility by a trucking company which is a public utility. The property, being used directly in the operation of a public utility, is public utility property within the definition of T.C.A. § 67–601(7), and must be classified as such for the purpose of ad valorem taxes.

■ Appellant argues that if the subject property is classified as public utility prop-

erty for tax purposes, it must be assessed by the Public Service Commission and not by the Metropolitan Assessor of Property, citing T.C.A. § 67–901 which provides in part as follows:

"The Tennessee public service commission, hereinafter called the commission, is authorized and directed to assess for taxation, for state, county, and municipal purposes, all of the properties of every description, tangible and intangible, within the state, owned by and all personal property used and/or leased by the following named persons hereinafter referred to as companies, namely: . . . (11) motor bus and/or truck companies holding a certificate of convenience and necessity or contract hauler's permit from the Tennessee public service commission or the interstate commerce commission and domiciled in this state and/ owning or leasing real or personal property located in this state; . . ."

As pointed out by appellees, "this statute directs the Public Service Commission to assess two basic groups of properties—(1) all properties within the State *owned* by the described companies, and (2) all *personal* property used and/or leased by the described companies."

Appellant argues the leasehold interest of Mason Dixon is personalty and thus is within the basic groups of property to be assessed by the Public Service Commission. The fallacy of this argument is that the leasehold interest is not the property interest that was assessed. It was the fee interest in *real* property *owned* by appellant, who is not a company described in T.C.A. § 67–901; consequently, the property does not fall within either of the basic groups of properties that are to be assessed by the Public Service Commission.

Aside from questioning the merits of the classification of appellant's property for ad valorem tax purposes, plaintiff insists there were two flagrant violations of procedural due process in this case:

One, that appellant was not given notice nor an opportunity for a hearing before the Executive Secretary issued the "Corrected Official Certificate" classifying appellant's property as "public utility property;"

Two, that appellant was coerced into a hearing on the merits of its claim before the State Board of Equalization.

■ We see no basic violation of due process in the procedure followed in classifying appellant's property for ad valorem tax purposes or in the review of the classification. *Cf.* T.C.A. § 67–639. Certainly, there was no coercion so as to invalidate the hearing before the State Board of Equalization wherein appellant was represented by counsel, offered testimony, and was given the opportunity to submit a post-hearing brief. Further, it is interesting to note that appellant at no time questioned the value placed on the property by the assessing authority, but only questioned the classification of the property for ad valorem tax purposes. The facts on which the classification was based were undisputed, leaving in issue only the legal conclusion to be drawn from the facts. Appellant had a full opportunity, both before the State Board of Equalization, the chancery court, and this court, to present its position on the controlling issue of law. This being so, any error in the procedure before the "hearing examiner" or the State Board of Equalization would be harmless error.

Decree affirmed. Costs incident to the appeal are adjudged against appellant, The Crown Enterprises, Inc., and its surety.

FONES, HENRY, BROCK and HARBISON, JJ., concur.